Alexander Prieto (SBN 270864)
Richard Rothschild (SBN 67356)
Antionette D. Dozier (SBN 244437)
Rebecca Miller (SBN 317405)
WESTERN CENTER ON
LAW & POVERTY
3701 Wilshire Blvd., Suite 208
Los Angeles, CA 90010-2826
Tel: (213) 487-7211
Fax: (213) 487-0242
aprieto@wclp.org
rrothschild@wclp.org
adozier@wclp.org
rmiller@wclp.org

Lindsay Nako (SBN 239090)
Jocelyn D. Larkin (SBN 110817)
David S. Nahmias (SBN 324097)
IMPACT FUND
2080 Addison Street, Suite 5
Berkeley, CA 94704-1693
Tel: (510) 845-3473
Fax: (510) 845-3654
lnako@impactfund.org
jlarkin@impactfund.org
dnahmias@impactfund.org

*Attorneys for Plaintiffs and the Plaintiff Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ROBIN HALL** and **STEVEN SUMMERS**, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES DEPARTMENT OF AGRICULTURE** and **GEORGE ERVIN "SONNY" PERDUE III**, in his official capacity as United States Secretary of Agriculture,<br><br>Defendants. | Case No. 3:20-cv-3454<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**CLASS ACTION** |

1. The United States is in the grip of the COVID-19 global pandemic, the worst in more than a century. It has created a dangerous public health crisis, unprecedented rates of unemployment, and profound social and economic disruption. Among the most immediate and urgent problems arising from the pandemic is hunger. Food prices are higher, many food staples are scarce, and shelter-in-place orders make food less accessible, particularly for those most vulnerable to the health risks of the coronavirus. One in four California households is now food insecure, telling public health researchers that "the food we bought just didn't last, and we didn't have enough money to buy more."

2. In response to this public health crisis, Congress passed the Families First Coronavirus Response Act ("Families First Act"). Among its goals, the Act sought to address rising food insecurity and hunger with significant additional resources for the federal government's Supplemental Nutrition Assistance Program ("SNAP," formerly known as the Food Stamp program). Congress directed the Secretary of Agriculture to approve state requests for emergency benefits to be distributed to current SNAP recipients to help them meet temporary food needs during the public health emergency.

3. The United States Department of Agriculture ("USDA") has implemented an interpretation of the Act that departs from the statute's directive and prevents state SNAP administrators, including the California Department of Social Services, from providing emergency food benefits to households that are receiving the maximum SNAP monthly benefit. These are the households with the lowest incomes, fewest resources, and greatest likelihood of hunger. USDA is denying emergency food assistance to those who need it the most in the midst of this unparalleled economic and health catastrophe.

4. Plaintiffs Robin Hall and Steven Summers challenge USDA's interpretation of the Families First Coronavirus Response Act in a manner that denies emergency food benefits to the Californians most in need.

//
//
//

## JURISDICTION, VENUE, AND RIGHT OF ACTION

5. This action is brought against an Executive Branch agency and a current Executive Branch official in his official capacity. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1346 (actions against the United States), and 5 U.S.C. § 702 (providing for judicial review of agency action under the Administrative Procedure Act).

6. Venue in this judicial district is proper under 28 U.S.C. § 1391(e)(1) because Plaintiffs Robin Hall and Steven Summers reside in the District.

7. Plaintiffs' action for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201(a) and 2202 and by Rules 57 and 65 of the Federal Rules of Civil Procedure. 5 U.S.C. § 702 confers rights of action to enforce the statutes cited in this complaint.

## PARTIES

8. Plaintiff Robin Hall is a resident of Santa Rosa in Sonoma County, California. She is currently eligible for and receiving the maximum SNAP benefits for her household size of one person.

9. Plaintiff Steven Summers is a resident of Oakland in Alameda County, California. He is currently eligible for and receiving the maximum SNAP benefits for his household size of one person, less $10 each month due to an earlier overissuance of benefits.

10. Defendant United States Department of Agriculture is the federal agency charged with implementing SNAP, which provides nutritional assistance to low-income individuals throughout the United States. 7 U.S.C. § 2013(a). USDA's component agency, the Food and Nutrition Service, administers SNAP. 7 C.F.R. §§ 2.57(a)(1), 271.3(a).

11. Defendant George Ervin "Sonny" Perdue III is the current U.S. Secretary of Agriculture. As Secretary, he is responsible for all actions taken by USDA. 7 U.S.C. § 2013(a). Secretary Perdue is sued in his official capacity.

# FACTS

## I. SNAP is an Essential Anti-Hunger Program, Serving Millions of Californians Through the CalFresh Program.

12. SNAP is the country's largest anti-hunger program. It provides food to over forty million low-income individuals and families and is often the last resource to stave off hunger for children and adults across the country.

13. Recognizing that "the limited food purchasing power of low-income households contributes to hunger and malnutrition among members of such households," Congress created SNAP to "safeguard the health and well-being of the Nation's population" and "alleviate . . . hunger and malnutrition" by "permit[ing] low-income households to obtain a more nutritious diet through normal channels of trade." 7 U.S.C. § 2011. The federally funded program provides benefits that qualifying individuals can redeem for eligible foods at authorized retailers. *Id.* § 2013(a). The program helps create financial stability for low-income individuals while also strengthening the nation's agricultural economy. *Id.* § 2011.

14. The Food and Nutrition Act requires that each state designate a state agency to administer SNAP benefits for its residents. *Id.* § 2020; 7 C.F.R. § 271.4. Each state also designs its own policies and regulations for administering SNAP benefits for its population, within the parameters set by the Food and Nutrition Act and USDA. 7 U.S.C. § 2020(d)-(e).

15. California's SNAP program, known as "CalFresh," is administered by the California Department of Social Services ("CDSS" or "the Department") in coordination with the state's 58 county human services agencies. Cal. Welf. & Inst. Code § 18902. The Department determines who qualifies for CalFresh benefits and issues California-specific SNAP regulations and policies. *See id.* §§ 18904, 18904.1. As of March 2020, CalFresh provided benefits to over 4 million individuals and nearly 2.19 million households in California.[1]

---

[1] Cal. Dep't of Soc. Servs., *CalFresh Data Dashboard* (last updated May 1, 2020), https://www.cdss.ca.gov/inforesources/data-portal/research-and-data/calfresh-data-dashboard (last visited May 18, 2020).

16. The maximum SNAP allotment is determined by household size and uniform across all states in the contiguous United States and the District of Columbia. 7 U.S.C. § 2014(b); 7 C.F.R. § 273.10(e)(4)(i). Currently the maximum monthly allotment for an individual is $194 per month. This is the equivalent of $6.38 per day or about $2 per meal. Maximum SNAP allotments increase as household size increases, as shown in the table below:

*Federal Fiscal Year 2020 Maximum Allotment by Household Size*[2]

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | Each Add'l Person |
|---|---|---|---|---|---|---|---|---|
| $194 | $355 | $509 | $646 | $768 | $921 | $1,018 | $1,164 | +$146 |

## II. The COVID-19 Pandemic Largely Shut Down Our Nation's Economy and Food Insecurity Has Proliferated.

17. The United States is entering the worst economic crisis since the Great Depression, caused by the 2019 novel coronavirus (COVID-19) pandemic. As of the filing of this Complaint, the Centers for Disease Control and Prevention reports over 90,000 deaths and over 1.5 million cases in the United States—although experts believe that the infection and death toll are far higher.

18. As coronavirus cases escalated worldwide, the World Health Organization designated the outbreak as a Public Health Emergency of International Concern on January 30, 2020. The next day, January 31, U.S. Health and Human Services Secretary Alex Azar declared a public health emergency for the entire United States, retroactive to January 27. On March 11, the World Health Organization declared the outbreak a pandemic. California Governor Gavin Newsom proclaimed a statewide state of emergency due to COVID-19 on

---

[2] Cal. Dep't of Soc. Servs., All County Info. Notice I-54-19, *CalFresh Cost-of-Living Adjustments Effective October 1, 2019* at 2 (Aug. 21, 2019), https://www.cdss.ca.gov/Portals/9/ACIN/2019/I_54_19_ES.pdf?ver=2019-09-24-104141-480.

March 4, 2020.  On March 13, 2020, President Donald Trump declared a national emergency to contain and combat the coronavirus.  On March 22, 2020, President Trump also declared a major disaster in California as a result of the pandemic.

19.     Fearing increasing rates of infection and resulting strain on the hospital system, on March 16, 2020, six counties in the San Francisco Bay Area (Alameda, Contra Costa, Marin, San Francisco, San Mateo, and Santa Clara) announced shelter-in-place orders, effective March 17.  These orders prohibit residents from leaving their homes except to complete essential activities and require all non-essential businesses and establishments to suspend their operations.  On March 19, 2020, Governor Newsom issued an executive order imposing similar shelter-in-place restrictions for all California residents.  Shortly thereafter, states and localities across the nation began imposing their own shelter-in-place orders.  On April 29, 2020, the six Bay Area counties and the city of Berkeley extended their shelter-in-place orders until May 31.  As of today, those same six counties and Berkeley have either lifted some restrictions or announced they would do so, consistent with the guidelines of "Stage Two" the governor's "Resilience Roadmap" for reopening, but all counties in California are still operating at limited levels.

20.     COVID-19 has had breathtaking economic consequences.  On April 29, 2020, the Department of Commerce's Bureau of Economic Analysis released data estimating that the U.S. gross domestic product contracted by 4.8 percent during the first quarter of 2020, the worst quarterly decline since the Great Recession in 2008.  The Congressional Budget Office projects an even deeper contraction of 12 percent in the second quarter.  Unemployment rates are skyrocketing, surpassing those seen in the Great Depression of the 1930s.  Nationwide, nearly 36.5 million people have filed for unemployment insurance to date.  On May 8, 2020, the Department of Labor's Bureau of Labor Statistics reported that the national unemployment rate soared to 14.7 percent, from 3.5 percent in February.

21.     California is experiencing the public health, economic, and social effects of the coronavirus pandemic.  As of this filing, California alone reports over 84,000 coronavirus infections and over 3,000 deaths.  The widespread closure of restaurants, hotels, and other

businesses is wreaking havoc on the state economy and threatening the livelihoods of millions of Californians. On May 14, 2020, the California Employment Development Department announced that it had processed a total of 4.7 million unemployment insurance claims since the beginning of the coronavirus outbreak, which likely means that 25 percent of California's workers are unemployed.

22. The staggering increase in unemployment and financial uncertainly likely will also cause millions of people to become food insecure and experience hunger. In 2018, 37 million Americans experienced some level of food insecurity, meaning they lacked reliable access to sufficient and quality food. If unemployment and poverty rates continue to climb, that number could rise to over 54 million people.[3] A recent study from a project of the Brookings Institution found that, by the end of April 2020, more than one in five households in the United States and two in five households with mothers with children aged 12 and under were food insecure.[4] Greater food insecurity strains the nation's food banks, soup kitchens, and other sources of food assistance, causing many more people to go hungry.

23. In California, jobless rates since the pandemic have been highest among the entertainment, hospitality, food, and other services industries—industries whose workers are most likely to be food insecure.[5]

//
//
//
//

---

[3] *See* Feeding Am., *The Impact of the Coronavirus on Food Insecurity* 1 (last revised Apr. 22, 2020), https://hungerandhealth.feedingamerica.org/resource/impact-coronavirus-food-insecurity/.

[4] Lauren Bauer, The Hamilton Proj., *The COVID-19 Crisis Has Already Left Too Many Children Hungry in America* (May 6, 2020), https://www.hamiltonproject.org/blog/the_covid_19_crisis_has_already_left_too_many_children_hungry_in_america.

[5] Sarah Bohn et al., Pub. Pol'y Inst. of Cal., *Early Insights on California's Economic Downturn* (Apr. 23, 2020), https://www.ppic.org/blog/early-insights-on-californias-economic-downturn/.

### III. Congress Passed the Families First Coronavirus Response Act to Strengthen Nutrition Assistance and Provide Temporary Relief for SNAP Recipients.

24. Faced with the potential for a national public health crisis and widespread economic meltdown, committee leaders in the U.S. House of Representatives introduced H.R. 6201, the Families First Coronavirus Response Act of 2020. Among many critical provisions, the bill provided for the COVID-19 Supplemental Nutrition Assistance Program (CR-SNAP), a package of initiatives to combat rising hunger and food insecurity.

25. H.R. 6201 appropriated funds to USDA to provide additional emergency SNAP allotments. The bill also provided additional SNAP benefits for households with children who could not access free or reduced-priced meals due to school closures; expanded access to child nutrition and school meals programs and the Special Supplemental Nutrition Program for Women, Infants, and Children (WIC); authorized nutrition grants or supplemental grants to U.S. territories and emergency food assistance programs; and suspended the time limit on benefits for out-of-work adult SNAP recipients.

26. On March 14, 2020, the House passed the Families First Coronavirus Response Act, garnering 363 votes in favor, 40 votes against, and one "present" vote. The Senate quickly took up H.R. 6201 and passed it with 90 votes in favor on March 18, 2020. The same day, President Trump signed the bill as the Families First Coronavirus Response Act of 2020, Pub. L. No. 116-127, 134 Stat. 178 (Mar. 18, 2020). President Trump also released a fact sheet explaining, "This legislation provides strong economic assistance to American businesses, workers, and families, alleviating financial burdens experienced by those affected by the virus," including "funding and flexibility for emergency nutritional aid for senior citizens, women, children, and low-income families."[6]

27. Section 2302(a) of the Families First Act requires the Secretary of Agriculture to approve state agency requests to provide emergency allotments of SNAP benefits to

---

[6] Press Release, White House, President Donald J. Trump Is Supporting American Businesses, Workers, and Families Impacted by the Coronavirus (Mar. 18, 2020), https://www.whitehouse.gov/ briefings-statements/president-donald-j-trump-supporting-american-businesses-workers-families-impacted-coronavirus/.

participating households when (1) a public health emergency is declared by the Secretary of Health and Human Services based on an outbreak of COVID-19, and (2) a State has issued an emergency or disaster declaration based on an outbreak of COVID-19.

28. As to the amount of the emergency allotments, section 2302(a)(1) provides:

> [T]he Secretary of Agriculture . . . shall provide . . . for emergency allotments . . . not greater than the applicable maximum monthly allotment for the household size[.]

### IV. USDA Implements an Interpretation of Section 2302(a)(1) That Is Counter to the Language of the Families First Act.

29. By memorandum dated March 20, 2020, USDA provided guidance to states requesting emergency allotments under section 2302 of the Families First Act.

30. The March 20 memorandum included a template "Request to Provide Emergency Allotments (Supplements) to SNAP Households." In the template request, USDA described a permissible state request as follows:

> The State proposes to provide an emergency allotment to address temporary food needs to households *to bring all households up to the maximum benefit* due to pandemic related economic conditions for up to 2 months. (Emphasis added.)

31. On April 10, 2020, USDA issued a memorandum to all states that summarily denied all state requests that sought to adjust SNAP eligibility requirements that "do not meet the requirements for approval provided under the Families First Coronavirus Response Act[.]" The memorandum stated that the Act "provided USDA discretion in approving adjustment requests, and USDA has taken into consideration the factors outlined in [the Families First Act] when evaluating requests." Therefore, Food and Nutrition Services was denying state requests "that seek to adjust SNAP eligibility requirements by . . . [p]roviding emergency allotments that exceed the maximum benefit for a household's size."

32. On April 21, 2020, USDA provided updated guidance regarding the issuance of emergency allotments for future months. The April 21 memorandum provides that all states that received USDA approval for the first two months of emergency allotment

issuances, including California, are approved to continue issuing monthly emergency allotments in the manner approved until the end of the COVID-19 public health emergency. The April 21 memorandum did not alter USDA's March 20 guidance on eligibility for and amount of emergency benefit allotments. USDA reiterated that:

> A household's [emergency allotment] cannot increase the current monthly household SNAP benefit allotment beyond 'the applicable maximum monthly allotment for the household size.' Accordingly, SNAP households that already receive the maximum monthly allotment for their household size are not eligible for [emergency allotments].

33. On April 27, 2020, USDA issued a memorandum to states directing them to report all SNAP emergency allotments issued in a given month as "Disaster Supplements." The memorandum did not alter the March 20 guidance.

## V. California Requests Emergency Allotments for SNAP Households, While Challenging USDA's Interpretation of the Families First Act.

34. On March 25, 2020, Alexis Fernández, Chief of the CalFresh and Nutrition Branch of the California Department of Social Services, submitted California's request to provide emergency allotments pursuant to section 2302 of the Families First Act. The cover letter explicitly rejected USDA's interpretation of the Act, declaring that:

> CDSS disagrees with the U.S. Department of Agriculture (USDA)'s interpretation of this section as meaning that a household may only receive supplemental SNAP benefits to the extent that the supplement raises the household's total benefit level to the maximum benefit amount based on household size. CDSS finds this interpretation to be in conflict with both the plain language of the Act and the circumstances leading to the passage of the Act.

35. California's letter further stated that the Department "finds no basis in the text of the Act to support the USDA's interpretation of 'emergency allotment' as supplemental to current allotments in such a way that when added to a household's current benefit, the total benefit amount—both current and emergency—do not exceed the maximum household allotment when summed." The Department warned that USDA's interpretation contravened the intent of the Families First Act to "alleviate the negative impacts caused by the COVID-19 pandemic" and "would leave the most vulnerable households who have the least resources

without any increase in SNAP benefits, as many are already receiving the maximum monthly benefit allotment."

36. California's March 25 request relied on a calculation for emergency allotments that attempted to align the language of the Act with USDA's guidance. The Department estimated the total value of potential benefits resulting from USDA's interpretation of the emergency allotments provision ($253,647,113 per month) and proposed dividing that amount by the total number of SNAP recipients (4,075,962 individuals). This method would have resulted in an emergency allotment payment of $60 to each person in every participating household in California in March and April 2020, in addition to their regular monthly SNAP allotments. According to the Department:

> This proposed approach more equitably distributes limited resources among all SNAP households across the state, including the poorest SNAP households. These households are most likely to have unmet food needs in a time of crisis.

37. On March 26, 2020, Food and Nutrition Services rejected California's request for emergency allotments because it was "not aligned with the Emergency Allotment guidance." Food and Nutrition Services directed the Department to "revise the plan in accordance with the template."

38. The next day, March 27, the Department submitted a revised request to USDA. In its cover letter, the Department wrote that "for reasons outlined in our initial request, the Act authorizes payments more broadly than as interpreted by [Food and Nutrition Services] and [the Department] reserves the right to challenge FNS' implementation of the Act." In its request, the Department requested a revised total of $253,647,115 per month in allotments, based on the same estimate of SNAP households and individuals as in its previous request, and proposed distributing emergency benefits only to households below the maximum allotment in amounts that would bring them up to the maximum amount.

39. On March 30, 2020, Food and Nutrition Services approved California's revised request for emergency allotments.

40. On April 2, 2020, the Department issued an All County Welfare Directors Letter regarding the emergency allotments, stating:

> Emergency allotments will raise each household's regular monthly CalFresh allotment to the maximum allowable allotment based on household size. Per guidance provided by the Food and Nutrition Service, CalFresh households already receiving the maximum allowable allotment based on household size are not eligible to receive an emergency allotment of CalFresh benefits.
>
> All CalFresh households not already at the maximum allowable allotment based on household size are eligible to receive an emergency allotment[.]

41. In its March 27 revised request, the Department stated that there were 2,176,109 households eligible for SNAP benefits in California. In its report for the benefit month of May, submitted on May 4, the Department reported that 1,151,714 households were receiving emergency allotment benefits, meaning over one million SNAP-eligible households did not receive emergency allotments for March and April.

42. In its report for the month of May, the Department stated that emergency allotments for the benefit month of May would issue on June 13, 2020.

**VI.   USDA's Guidance is Inconsistent with the Plain Language of the Families First Act and Contravenes Congress's Intent to Strengthen SNAP During the COVID-19 Pandemic.**

43. The Families First Act provides emergency allotments as supplemental food benefits to address the temporary increase in emergency food needs, distinct from the regular monthly allotments provided under the Food and Nutrition Act. The statute places a simple cap on the amount of these emergency allotments: "not greater than the applicable maximum monthly allotment for the household size."

44. USDA departs from the plain language of the Act by only approving state requests to provide emergency allotments equal to the difference between a household's regular monthly allotment and the maximum allotment for its household size. For households currently receiving the maximum regular allotment, this calculation results in *zero dollars* of additional benefits.

45. In passing the Families First Act, members of Congress, including the bill's sponsor and co-sponsors, announced that its SNAP provisions were meant to *strengthen* food assistance and provide additional temporary assistance to vulnerable families during the

coronavirus pandemic.[7] There was no indication that Congress intended to leave the most vulnerable families (those receiving the maximum monthly allotments) without any emergency assistance, while providing the greatest assistance to households with relatively higher incomes. Yet that is how USDA is implementing the Families First Act.

46. On April 23, 2020, Plaintiffs' counsel sent a letter to Defendants USDA and Secretary Perdue advising them that their guidance interpreting section 2302(a)(1) of the Families First Act was contrary to the language and purpose of the statute, and that as a result, USDA unlawfully denied essential emergency assistance to Plaintiffs. Plaintiffs requested that USDA withdraw the guidance and process California's past and future requests for emergency allotments consistent with the Act.

47. On May 7, 2020, USDA responded to thank Plaintiffs' counsel for their April 23 letter. USDA took no actions to address Plaintiffs' concerns.

**VII.   USDA's Guidance Adversely Harms the Plaintiffs**

48. Plaintiffs currently suffer and will continue to suffer harm if Defendants continue to interpret section 2302(a)(1) of the Families First Act as reflected in the March 20 and April 21, 2020 guidance. Plaintiffs have no adequate remedy at law.

    **A.   Plaintiff Robin Hall**

49. Plaintiff Robin Hall is 45 years old and lives in transitional housing provided by Catholic Charities in Santa Rosa, California. Because of her diagnosed medical conditions, including Type 2 Diabetes and congestive heart failure, she is among the groups considered most vulnerable to the life-threatening effects of COVID-19.

50. Ms. Hall has no income other than her monthly allotment of $194 in SNAP benefits, the maximum amount for her household size of one. In March, April, and May

---

[7] *See, e.g.*, Press Release, House Comm. on Approps., House Democrats Introduce Families First Coronavirus Response Act (Mar. 11, 2020), https://appropriations.house.gov/news/press-releases/house-democrats-introduce-families-first-coronavirus-response-act (Congressman Bobby Scott (D-VA), bill co-sponsor, quoted as saying the Act "provides our constituents the . . . food assistance . . . they need to cope with the widespread consequences of this pandemic").

2020, Ms. Hall received her monthly SNAP allotments. She is not receiving emergency allotments.

51. Because of the pandemic, shelter-in-place orders, and related economic impacts, Ms. Hall's monthly SNAP benefits must cover more of her food needs than before the pandemic. The church and drop-in service center for homeless women where she previously obtained free meals each day have closed or greatly restricted their hours because they are considered non-essential businesses. She must avoid the soup kitchen that she used to frequent for free lunch because of health concerns and the risk of coronavirus infection. She now relies on her SNAP benefits for breakfast and lunch nearly every day, which means she has to skip those meals when her benefits run out in the middle of the month. She is already skipping at least one meal a day frequently to stretch out her monthly SNAP benefits.

52. As a current SNAP recipient, the Families First Act entitles Ms. Hall to emergency SNAP allotments. Because she is entitled to receive the maximum monthly allotment for a household size of one, however, Ms. Hall is not receiving any additional benefits.

### B. Plaintiff Steven Summers

53. Plaintiff Steven Summers is 64 years old and lives alone in a rent-controlled studio apartment in a converted hotel in Oakland, California. Because of his age, he is among the groups considered most vulnerable to the life-threatening effects of COVID-19.

54. Mr. Summers has no regular income other than his monthly allotment of $194 in SNAP benefits, the maximum amount for his household size of one, less $10 each month due to an earlier overissuance of benefits. In March, April, and May 2020, Mr. Summers received his monthly SNAP allotments. He is not receiving emergency allotments.

55. Because of the pandemic, shelter-in-place orders, and related economic impacts, it is more difficult for Mr. Summers to meet his food needs with his SNAP benefits than before the pandemic. The free groceries he previously relied on from a local food pantry now come in a pre-selected grocery box with fewer fruits and vegetables, and fewer items that he needs. He exhausts his SNAP benefits more quickly buying food from local

grocery stores where prices are slowly rising and the lower priced items he usually purchases are harder to find.  His normal practice of visiting multiple stores to find the lowest priced food items is more time-consuming with physical distancing practices and increases his risk of exposure to COVID-19, causing him to pay more for items he cannot do without.

56. As a current SNAP recipient, the Families First Act entitles Mr. Summers to emergency SNAP allotments. Because he is entitled to receive the maximum monthly allotment for a household size of one, however, Mr. Summers is not receiving any additional benefits.

## CLASS ACTION ALLEGATIONS

57. Named Plaintiffs Robin Hall and Steven Summers seek to represent a Proposed Class defined as:  SNAP recipients in California who have been deemed eligible to receive, are receiving, or will receive the regular maximum monthly SNAP allotment for their household size from March 2020 until the Secretary for Health and Human Services rescinds the COVID-19 public health emergency declaration or the State-issued emergency or disaster declaration expires.

58. The requirements of Federal Rule of Civil Procedure 23(a)(1) are met because the Proposed Class is so numerous that joinder of all members is impracticable. According to data prepared by the California Department of Social Services and submitted to USDA, there are over one million SNAP-eligible households are not receiving emergency allotments.

59. The requirements of Rule 23(a)(2) are met in that members of the Proposed Class share common issues of law and fact.  The core common legal question is:  Has the USDA misinterpreted Section 2302(a)(1) in violation of the Administrative Procedures Act by limiting eligibility for emergency allotments to SNAP recipients who receive less than the maximum regular monthly benefit for their household size?

60. The requirements of Rule 23(a)(3) are met in that the claims of the Proposed Class Representatives are typical of the claims of the class they represent:

      a. Proposed Class Representative Robin Hall is eligible for and receives the maximum monthly SNAP allotment for her household size and is not receiving emergency allotments.

      b. Proposed Class Representative Steven Summers is eligible for and receives the maximum monthly SNAP allotment for his household size (less $10 each month due to an earlier overissuance of benefits) and is not receiving emergency allotments.

61. The requirements of Rule 23(a)(4) are met in that the Proposed Class Representatives are committed to and will fairly and adequately protect the interests of the Class. In supporting their individual claims, the Proposed Class Representatives will simultaneously advance the claims of absent class members. They know of no conflict of interest between any of themselves and the Class or any class members and are likewise unaware of any conflict of interest between or among any of the class members.

62. The requirements of Rule 23(g) are met in that the Named Plaintiffs and Proposed Class are represented by experienced counsel who will adequately represent the interests of the Class. Western Center on Law and Poverty has deep expertise in public benefits litigation and has acted as class counsel in many class actions on behalf of poor and low-income clients. Impact Fund has a long history of litigating complex federal class actions and has acted as class counsel in many civil rights and social justice class actions.

63. The requirements of Rule 23(b)(2) are met in that Defendants have acted, and continue to act, on grounds generally applicable to the Class that the Named Plaintiffs seek to represent, thereby rendering appropriate injunctive and declaratory relief for the Class as a whole. Defendants have distributed and implemented guidance that deprives members of the Proposed Class from receiving emergency allotments of SNAP benefits. An order enjoining the USDA guidance and any future interpretation of Section 2302(a)(1) of the Families First Act to that effect will redress the injuries to the members of the Proposed Class.

//

//

# CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF
### Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(C)
### Against Defendants USDA and Perdue – In Excess of Statutory Authority

64. Plaintiffs re-allege and incorporate by reference the allegations in the preceding paragraphs.

65. Under the Administrative Procedure Act (APA), 5 U.S.C. § 500 *et seq.*, courts must overturn agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

66. USDA is an "agency" under the APA. *See* 5 U.S.C. § 551(1).

67. The March 20 memorandum and guidance is a final agency action subject to judicial review under the APA. *See* 5 U.S.C. § 704.

68. USDA and Secretary Perdue, as agents of the Executive Branch, do not have authority to deny appropriate State applications in a manner that eliminates or curtails emergency benefit allotments legislated by Congress.

69. USDA's interpretation of section 2302(a)(1) of the Families First Act, as set forth in the March 20 and April 21 memoranda, is inconsistent with the plain language of the statute.

70. Accordingly, because USDA had no jurisdiction, authority, or right to restrict eligibility for emergency allotments under the Families First Act, USDA's interpretation of section 2302(a)(1) violates the APA and must be set aside. 5 U.S.C. § 706(2)(C).

71. Plaintiffs Hall and Stevens and the Proposed Class are within the zone of interest of section 2302 because the legislation is intended to increase SNAP benefits to recipients like themselves.

72. Plaintiffs have been harmed by the actions of Defendants because USDA and Secretary Perdue have prevented California from providing the Plaintiffs and the Proposed Class with emergency nutrition assistance as Congress intended.

//

//

**SECOND CLAIM FOR RELIEF**
**Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)**
**Against Defendants USDA and Perdue – Arbitrary and Capricious**

73. Plaintiffs re-allege and incorporate by reference the allegations in the preceding paragraphs as if set forth fully herein.

74. Under the APA, courts must overturn agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.§ 706(2)(A).

75. USDA's interpretation of section 2302(a)(1) of the Families First Act, as set forth in its March 20 and April 21 memoranda, is arbitrary and capricious because it eliminates or curtails emergency benefit allotments legislated by Congress in a manner that Congress did not intend.

76. Although USDA may implement policies within the limits set by Congress, the APA requires agencies to provide a reasoned explanation for their actions, which USDA has failed to do.

77. Accordingly, because USDA's interpretation of section 2302(a)(1) is arbitrary and capricious, it violates the APA and must be set aside. 5 U.S.C. § 706(2)(A).

78. Plaintiffs Hall and Stevens and the Proposed Class are within the zone of interest of section 2302 because the legislation is intended to increase SNAP benefits to recipients like themselves.

79. Plaintiffs have been harmed by the actions of Defendants because USDA and Secretary Perdue have prevented California from providing the Plaintiffs and the Proposed Class with emergency nutrition assistance as Congress intended.

**THIRD CLAIM FOR RELIEF**
**Declaratory Relief Pursuant to 28 U.S.C. §§ 2201-02**
**Against Defendants USDA and Perdue**

80. Plaintiffs re-allege and incorporate by reference the allegations in the preceding paragraphs as if set forth fully herein.

81. Under 28 U.S.C. § 2201, this Court has authority to issue a judgment declaring the rights of the parties.

82. An actual controversy exists between Plaintiffs and the Proposed Class and Defendants. Defendants' interpretation of section 2302(a)(1) of the Families First Act denies Plaintiffs and the Proposed Class emergency allotments of SNAP benefits. Defendants' interpretation contradicts the language of section 2302(a)(1), is arbitrary and capricious, and violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (C). Defendants contend that their actions are lawful.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that the Court:

1. Take jurisdiction of this case;

2. Certify this action as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure;

3. Preliminarily and permanently enjoin Defendants from denying any otherwise appropriate request from California under section 2302(a)(1) of the Families First Coronavirus Response Act because it provides emergency Supplemental Nutrition Assistance Program allotments to households receiving the maximum monthly benefit amount;

4. Declare that Defendants' policy and practice of denying otherwise appropriate requests from California under section 2302(a)(1) of the Families First Coronavirus Response Act because they provide emergency Supplemental Nutrition Assistance Program allotments to households receiving the maximum monthly benefit amount violates the Families First Coronavirus Response Act and the Administrative Procedure Act, 5 U.S.C. § 500 *et seq.*;

5. Award Plaintiffs their litigation costs and reasonable attorneys' fees, as appropriate; and

//

//

6. Grant such other and further relief as the Court may deem just and proper.

Dated: May 21, 2020

Respectfully submitted,

*[signature]*
LINDSAY NAKO
Impact Fund

*[signature]*
ALEXANDER PRIETO
Western Center on Law and Poverty

*Attorneys for Plaintiffs and the Plaintiff Class*