| | |
|---|---|
| Alexander Prieto (SBN 270864)<br>Richard Rothschild (SBN 67356)<br>Antionette D. Dozier (SBN 244437)<br>Rebecca Miller (SBN 317405)<br>WESTERN CENTER ON<br>LAW & POVERTY<br>3701 Wilshire Blvd., Suite 208<br>Los Angeles, CA 90010-2826<br>Tel: (213) 487-7211<br>Fax: (213) 487-0242<br>aprieto@wclp.org<br>rrothschild@wclp.org<br>adozier@wclp.org<br>rmiller@wclp.org | Lindsay Nako (SBN 239090)<br>Jocelyn D. Larkin (SBN 110817)<br>David S. Nahmias (SBN 324097)<br>IMPACT FUND<br>2080 Addison Street, Suite 5<br>Berkeley, CA 94704-1693<br>Tel: (510) 845-3473<br>Fax: (510) 845-3654<br>lnako@impactfund.org<br>jlarkin@impactfund.org<br>dnahmias@impactfund.org |

*Attorneys for Plaintiffs and the Plaintiff Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ROBIN HALL** and **STEVEN SUMMERS**, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>**UNITED STATES DEPARTMENT OF AGRICULTURE** and **GEORGE ERVIN "SONNY" PERDUE III**, in his official capacity as United States Secretary of Agriculture,<br><br>    Defendants. | Case No. 3:20-cv-03454<br><br>**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES** |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................ ii

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL ...................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL ...................... 2

I. INTRODUCTION ............................................................................................................ 2

II. FACTS SUPPORTING CLASS CERTIFICATION ....................................................... 3

    A. USDA Provides SNAP Benefits to Low-Income Californians Through the State's CalFresh Program. .................................................................................... 3

    B. The COVID-19 Health Crisis Has Dramatically Increased Food Insecurity Among Vulnerable Californians. ......................................................................... 4

    C. Congress Authorized Emergency SNAP Allotments in the Families First Coronavirus Response Act of 2020. ..................................................................... 6

    D. USDA Wrongly Denied the California Department of Social Services's March 25, 2020 Request to Provide Emergency Allotments to the Poorest SNAP Households in California. ..................................................................................... 7

    E. The Named Plaintiffs Have Been and Will Be Deprived of SNAP Emergency Allotments as a Result of USDA's Misinterpretation of Section 2302. ............... 8

III. LEGAL STANDARD AND PROPOSED CLASS DEFINITION ................................. 9

IV. THE PROPOSED CLASS SHOULD BE CERTIFIED ................................................ 10

    A. The Proposed Class Satisfies the Requirements of Rule 23(a). .......................... 10

        1. The Proposed Class is Sufficiently Numerous that Joinder is Impractical .. 10

        2. The Case Presents Common Questions of Law and Fact ........................... 11

        3. The Named Plaintiffs Are Typical of the Class .......................................... 12

        4. The Named Plaintiffs and Counsel Are Adequate Representatives ............ 13

    B. The Proposed Class Meets the Standard for Rule 23(b)(2) Certification. .......... 14

    C. The Court Should Appoint Attorneys from the Western Center on Law and Poverty and the Impact Fund as Class Counsel under Rule 23(g). ...................... 15

V. CONCLUSION ............................................................................................................... 16

**TABLE OF AUTHORITIES**

**PAGE(S)**

**FEDERAL CASES**

*Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 239 F.R.D. 9 (D.D.C. 2007) .................................................................................. 11

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ......................................................................................... 10, 11

*Garnett v. Zeilinger*,
  301 F. Supp. 3d 199 (D.D.C. 2018) .................................................................................. 11

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982) .......................................................................................................... 10

*Hart v. Colvin*,
  310 F.R.D. 427 (N.D. Cal. 2015) ....................................................................................... 14

*Hernandez v. County of Monterey*,
  305 F.R.D. 132 (N.D. Cal. 2015) ................................................................................. 10, 12

*J.L. v. Cissna*,
  No. 18-cv-04914, 2019 WL 415579 (N.D. Cal. Feb. 1, 2019) ......................................... 14

*Jane Doe 1 v. Nielsen*,
  357 F. Supp. 972 (N.D. Cal. 2018) ................................................................................... 14

*Leyva v. Medline Indus., Inc.*,
  716 F.3d 510 (9th Cir. 2013) ............................................................................................. 10

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ....................................................................................... 12, 14

*Rodriguez v. Hayes*,
  591 F.3d 1105 (9th Cir. 2010) ..................................................................................... 10, 14

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010) .......................................................................................................... 10

*Staton v. Boeing Corp.*,
  327 F.3d 938 (9th Cir. 2003) ............................................................................................. 13

*Wal-Mart Stores, Inc., v. Dukes*,
  564 U.S. 338 (2011) ..................................................................................................... 11, 14

*Wortman v. Air New Zealand*, 326 F.R.D. 549 (N.D. Cal. 2018) ........................................... 11

**FEDERAL STATUTES**

7 U.S.C. § 2011 ............................................................................................................................ 3

7 U.S.C. § 2013 ............................................................................................................................ 3

7 U.S.C. § 2013(a) .................................................................................................................. 3

7 U.S.C. § 2014 ...................................................................................................................... 4

7 U.S.C. § 2014(b) ................................................................................................................. 3

7 U.S.C. § 2020 ...................................................................................................................... 3

Families First Coronavirus Response Act,
    Pub. L. No. 116-127, § 2302(a), 134 Stat. 178 ........................................................... passim

**STATE STATUTES**

Cal. Welf. & Inst. Code § 18902 ............................................................................................ 3

**FEDERAL RULES**

Federal Rule of Civil Procedure 23(a) ........................................................................ 9, 10, 13

Federal Rule of Civil Procedure 23(a)(1) ............................................................................. 10

Federal Rule of Civil Procedure 23(a)(2) ....................................................................... 11, 12

Federal Rule of Civil Procedure 23(a)(3) ............................................................................. 12

Federal Rule of Civil Procedure 23(a)(4) ............................................................................. 13

Federal Rule of Civil Procedure 23(b) .................................................................................. 10

Federal Rule of Civil Procedure 23(b)(2) ....................................................................... passim

Federal Rule of Civil Procedure 23(g) .................................................................................. 15

Federal Rule of Civil Procedure 23(g)(1) ............................................................................. 15

**FEDERAL REGULATIONS**

7 C.F.R. § 273.10 .................................................................................................................... 4

7 C.F.R. § 271.4 ...................................................................................................................... 3

7 C.F.R. § 273.10(e)(4)(i) ....................................................................................................... 3

**OTHER AUTHORITIES**

7A Wright, Miller & Kane, *Federal Practice and Procedure* § 1763 (3d ed.
    2006) ............................................................................................................................... 11

Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof,* 84
    N.Y.U. L. Rev. 97 (2007). ............................................................................................... 14

# NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

PLEASE TAKE NOTICE that, upon assignment of the case to a district or magistrate judge and as soon thereafter as counsel may be heard by the assigned judge, Plaintiffs Robin Hall and Steven Summers will move the Court, under Rule 23(a), Rule 23(b)(2), and Rule 23(g) of the Federal Rules of Civil Procedure and Rule 7-2 of the Civil Local Rules of the Court, for certification of the proposed class challenging Defendants' interpretation of section 2302(a)(1) of the Families First Coronavirus Response Act and for appointment of class counsel.

In their Motion for Class Certification, Plaintiffs will seek an order certifying the proposed class defined as:

> SNAP recipients in California who have been deemed eligible to receive, are receiving, or will receive the regular maximum monthly SNAP allotment for their household size from March 2020 until the Secretary for Health and Human Services rescinds the COVID-19 public health emergency declaration or the State-issued emergency or disaster declaration expires.

The motion will seek certification of the class under Federal Rule of Civil Procedure 23(a) and 23(b)(2) because the misinterpretation of section 2303(a)(1) by Defendant U.S. Department of Agriculture (USDA) applies uniformly to the class and—as briefed in the concurrently filed motion for preliminary injunction—injunctive relief is appropriate for the class as a whole. The motion will also request appointment of attorneys from the Western Center on Law and Poverty and the Impact Fund as class counsel under Federal Rule of Civil Procedure 23(g).

This Motion for Class Certification and Appointment of Counsel is based on this Notice of Motion and Motion; the supporting Memorandum of Points and Authorities; the declarations of counsel Jocelyn D. Larkin and Richard A. Rothschild in support of Class Certification; Plaintiffs' Notice of Motion and Motion for Preliminary Injunction, the declarations of Robin Hall, Steven Summers, Lindsay Nako, Alexander Prieto, Lauren Bauer, Meg Davidson, Andrew Cheyne, Brittany Hodge, and Sarah Palmer DeFrank offered in support of Plaintiffs' Motion for Preliminary Injunction; and all of the records in the action.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

## I.  INTRODUCTION

Congress passed the Families First Coronavirus Response Act in March 2020 in response to the public health emergency created by the global pandemic.  Section 2302(a)(1) of the Act directs the U.S. Department of Agriculture to permit states to provide "emergency allotments" to households participating in the Supplemental Nutrition Assistance Program (SNAP, previously known as the Food Stamp program).  The statute requires that these allotments "address temporary food needs" and be "not greater than the applicable maximum monthly allotments for the household size."  This case challenges USDA's misinterpretation of section 2302(a)(1), which it has used to prevent California's most vulnerable recipients—those currently receiving the maximum *regular* monthly benefit—from getting supplemental *emergency* benefits.

Plaintiffs Robin Hall and Steven Summers seek to represent a class of these families and individuals in California to whom USDA is denying emergency benefits.  These class members do not have the capacity to dispute USDA's misinterpretation of section 2302(a)(1) on their own.  Faced with the cataclysmic changes wrought by the pandemic, their focus is on daily survival: feeding themselves and their families, protecting their health and safety, and observing shelter-in-place mandates.  A class action is ideally suited for these circumstances; it will allow one lawsuit to correct USDA's error and bring immediate and urgently needed relief to over one million California households.

Plaintiffs request that the Court certify a class of SNAP recipients in California who are receiving or will receive the maximum regular monthly benefit for their household size; all have been denied an emergency allotment as a result of USDA's interpretation of section 2302(a)(1).  Certification under Fed. R. Civ. P. 23(b)(2) is appropriate because the challenged policy applies uniformly to the class and the relief sought against USDA and Secretary Perdue is declaratory and injunctive relief.  Class certification will ensure full relief for the individuals and families in California affected by Defendants' conduct.

//

## II.  FACTS SUPPORTING CLASS CERTIFICATION[1]
### A. USDA Provides SNAP Benefits to Low-Income Californians Through the State's CalFresh Program.

SNAP is the country's largest anti-hunger program.  It provides food to over forty million low-income individuals and families and is often the last resource to stave off hunger for children and adults across the country. Recognizing that "the limited food purchasing power of low-income households contributes to hunger and malnutrition among members of such households," Congress enacted SNAP to "safeguard the health and well-being of the Nation's population" and "alleviate . . . hunger and malnutrition" by "permit[ing] low-income households to obtain a more nutritious diet through normal channels of trade." 7 U.S.C. § 2011.  SNAP provides monthly allotments that eligible low-income individuals use to purchase food at authorized retailers.  *Id.* § 2013.

SNAP is a federal-state partnership; USDA pays the full cost of SNAP benefits, but they are administered by the states.  *See id.* §§ 2013(a), 2020.  Each state designates a state agency to administer SNAP benefits for its residents.  *Id.* § 2020; 7 C.F.R. § 271.4.  In California, the SNAP program, known as "CalFresh," is administered by the California Department of Social Services and the state's 58 county human services agencies.  Cal. Welf. & Inst. Code § 18902.  As of March 2020, CalFresh provided benefits to over 4 million individuals and nearly 2.19 million households in California.[2]

The maximum SNAP allotment is uniform by household across all states in the contiguous United States and the District of Columbia.  7 U.S.C. § 2014(b); 7 C.F.R. § 273.10(e)(4)(i).  Currently the maximum monthly allotment for an individual is $194 per month.  This equals $6.38 per day or about $2 per meal.  Maximum SNAP allotments increase as household size increases, as shown in the table below:

---

[1] Plaintiffs' Motion for Preliminary Injunction and supporting memorandum, concurrently filed, explain in greater detail the factual record and legal violations.  (ECF No. 4).

[2] Cal. Dep't of Soc. Servs., *CalFresh Data Dashboard* (last updated May 1, 2020) https://www.cdss.ca.gov/inforesources/data-portal/research-and-data/calfresh-data-dashboard (last visited May 18, 2020).

*Federal Fiscal Year 2020 Maximum Allotment by Household Size*[3]

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | Each Add'l Person |
|---|---|---|---|---|---|---|---|---|
| $194 | $355 | $509 | $646 | $768 | $921 | $1,018 | $1,164 | +$146 |

The Food and Nutrition Act and USDA regulations determine SNAP eligibility as well as the amount of the allotment. 7 U.S.C. § 2014; 7 C.F.R. § 273.10. Families who receive the non-emergency maximum as their regular SNAP allotment are extremely poor—their net income after deductions for basic needs other than food is zero. This means that, without SNAP, they cannot buy food unless they sacrifice other essentials. Over one million households in California receive the maximum SNAP benefit. *See* Decl. of Lindsay Nako in Supp. of Pls.' Mot. for Prelim. Inj. ("Nako Decl.") (ECF No. 4-9) ¶ 3, Exs. 5, 8.

### B. The COVID-19 Health Crisis Has Dramatically Increased Food Insecurity Among Vulnerable Californians.

Since January 2020, COVID-19 has swept across the country, radically altering daily life and causing devastating economic and public health consequences. As of May 20, 2020, there are over 1.5 million known cases of COVID-19 in the U.S., and over 90 thousand Americans have died from the virus.[4] There are over 84 thousand known cases of COVID-19 in California.[5] Over three thousand Californians have died from the virus, and an additional three thousand Californians have been hospitalized with positive COVID-19 tests.[6]

The pandemic has greatly increased the need for food assistance among low-income California families, especially the households receiving the maximum regular SNAP

---

[3] Cal. Dep't of Soc. Servs., All County Info. Notice I-54-19, *CalFresh Cost-of-Living Adjustments Effective October 1, 2019* at 2 (Aug. 21, 2019), https://www.cdss.ca.gov/Portals/9/ACIN/2019/I_54_19_ES.pdf?ver=2019-09-24-104141-480.

[4] Ctrs. For Disease Control & Prevention, *Coronavirus Disease 2019 (COVID-19): Cases in the U.S.* (last updated May 20, 2020), https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.

[5] *California Coronavirus COVID-19 Statewide Update* (last updated May 20, 2020), https://update.covid19.ca.gov.

[6] *Id.*

allotment. COVID-19 and the state's shelter-in-place order increase these families' need for food assistance in several key ways.

**Food Costs:** The pandemic has increased the price of food. Decl. of Lauren Bauer in Supp. of Pls.' Mot. for Prelim. Inj. ("Bauer Decl.") (ECF No. 4-7) ¶¶ 30–32. The cost of purchasing food to eat at home has increased 3.6% nationally over the past three months. *See id.* ¶ 30. The April 2020 increase (2.6%) was the largest one month increase since 1974. *Id.* As a result, the maximum SNAP allotment cannot purchase as much food as it could before COVID-19, and especially not in California. Bauer Decl. ¶¶ 26-27, 31-32.

**Food Availability and Accessibility:** Changes in the availability of groceries caused by COVID-19 and the need to shelter in place make it harder to stretch the maximum allotment to meet nutritional needs. Bauer Decl. ¶¶ 33-34. Plaintiff Summers, for example, usually buys tuna at $1 per can and, when on sale, ground beef. On an April shopping trip, he could buy neither because the only available brand of tuna was twice the price and there was no ground beef on sale. Decl. of Steven Summers in Supp. of Pls.' Mot. for Prelim. Inj. ("Summers Decl.") (ECF No. 4-2) ¶ 14. Making multiple trips to the grocery store in search of affordable or available items has to be balanced against the health risks particularly for older individuals like Mr. Summers. *Id.* ¶ 16. SNAP recipients who are symptomatic or at greater risk of complications from exposure to the virus must avoid grocery stores altogether. While grocery delivery is an option for those who can afford it, SNAP benefits cannot be used for delivery fees or transportation costs. Bauer Decl. ¶ 33.

**Supplemental Food Sources:** The pandemic has made it more difficult for SNAP recipients to obtain food from food pantries, soup kitchens, and other community organizations. COVID-19 has placed tremendous strain on these organizations and the food banks that supply them. Across California, demand for their services has skyrocketed, as many of them close down in the wake of the pandemic. Decl. of Andrew Cheyne in Supp. of Pls.' Mot. for Prelim. Inj. (ECF No. 4-3) ¶ 6; Decl. of Meg Davidson in Supp. of Pls.' Mot. for Prelim. Inj. (ECF No. 4-4) ¶¶ 5-7; Decl. of Brittany Hodge in Supp. of Pls.' Mot. for Prelim. Inj. (ECF No. 4-5) ¶¶ 5-6; Decl. of Sarah Palmer DeFrank in Supp. of Pls.' Mot. for

Prelim. Inj. (ECF No. 4-6) ¶ 6.  When SNAP recipients manage to access an open food distribution point, the groceries may run out before they reach the head of the line or they may receive smaller amounts of food and less nutritious items.  *See* DeFrank Decl. ¶ 7; Davidson Decl. ¶ 9; Summers Decl. ¶ 18.

A recent study of the impact of the COVID pandemic found that 26 percent of households in California were "food insecure," meaning that respondents said that "the food that we bought just didn't last, and we didn't have enough money to get more."  Bauer Decl. ¶ 20.  A full third of California households in the study were "worried our food would run out before we got money to buy more." *Id.*

### C. Congress Authorized Emergency SNAP Allotments in the Families First Coronavirus Response Act of 2020.

In response to the unprecedented national crisis created by the COVID-19 pandemic, Congress passed the Families First Coronavirus Response Act on March 18, 2020. Pub. L. No. 116-127, 134 Stat. 178 (Families First Act).  In section 2302(a)(1) of the Act, Congress addressed the additional food needs resulting from the pandemic by authorizing extra "emergency allotments" to increase SNAP recipients' food purchasing power.

Section 2302(a)(1) makes this emergency assistance available when two conditions are met: there must be (1) "a public health emergency declaration by the Secretary of Health and Human Services under section 319 of the Public Health Service Act based on an outbreak of coronavirus disease 2019 (COVID–19)"[7] and (2) "an emergency or disaster declaration by a State based on an outbreak of COVID–19."[8]  Families First Act § 2302(a). If both are satisfied, USDA "shall provide … for emergency allotments" upon a request from a state agency "that provides sufficient data … supporting such request."  *Id.* § 2302(a)(1).

---

[7] The federal emergency declaration occurred on January 31, 2020.  Press Release, Dep't of Health & Hum. Servs., Secretary Azar Declares Public Health Emergency for United States for 2019 Novel Coronavirus (Jan. 31, 2020), https://www.hhs.gov/about/news/2020/01/31/secretary-azar-declares-public-health-emergency-us-2019-novel-coronavirus.html.

[8] California declared a COVID-19 related emergency on March 4, 2020. Governor Gavin Newsom, Proclamation of a State of Emergency (Mar. 4, 2020), https://www.gov.ca.gov/wp-content/uploads/2020/03/3.4.20-Coronavirus-SOE-Proclamation.pdf.

The statute directs USDA to issue guidance regarding the information necessary to support a state's request. *Id.*

Section 2302(a)(1) does not set specific amounts for emergency allotments, but sets two parameters for those amounts. Emergency allotments (1) must be targeted "to address temporary food needs," and (2) cannot be "greater than the applicable maximum monthly allotment for the household size." *Id.*

### D. USDA Wrongly Denied the California Department of Social Services's March 25, 2020 Request to Provide Emergency Allotments to the Poorest SNAP Households in California.

Despite the Act's clear language and intent, USDA issued guidance to states on March 20, 2020 and April 21, 2020, in which it interpreted section 2302(a)(1) as limiting emergency allotments to the difference between a household's regular allotment and the non-emergency maximum allotment for that household's size. In other words, individuals and families receiving less than the maximum regular allotment could be "topped off," but those who already receive the maximum due to their extreme poverty are completely denied emergency assistance to meet their temporary food needs.

California sought to provide emergency allotments to households receiving the maximum regular SNAP allotment. In the cover letter to its March 25 request, the Department of Social Services explained, "These households are the poorest SNAP households. The reason households receive the maximum benefit is that they have *no* income available to purchase food under the SNAP benefit calculation rules." Nako Decl. ¶ 3, Ex. 3 (emphasis in original). The request expressed the state's view that USDA's interpretation denying emergency allotments to these households, who "are most likely to have unmet food needs in a time of crisis," "finds no support in the language or purpose of section 2302." *Id.*

California therefore proposed to provide emergency allotments "more equitably," without exceeding the aggregate amount permissible under USDA's guidance. Nako Decl. ¶ 3, Ex. 3. Under the state's proposal, the total amount necessary to raise all households to the regular maximum monthly allotment would have been shared equally among all SNAP

households, resulting in a flat emergency allotment of $60 per person in each participating household. *Id.* The request also included information about the economic impact of COVID-19 in the state, consistent with USDA's guidance on supporting data. *Id.*

On March 26, USDA denied California's request and directed the state to revise the request "in accordance with the template." *Id.* ¶ 3, Ex. 4. The next day, California submitted a revised request consistent with the guidance, accompanied by a cover letter reiterating the state's position that USDA's interpretation of section 2302(a)(1) was inconsistent with the statute. *Id.* ¶ 3, Ex. 5. USDA approved the revised request. *Id.* ¶ 3, Ex. 6.

### E. The Named Plaintiffs Have Been and Will Be Deprived of SNAP Emergency Allotments as a Result of USDA's Misinterpretation of Section 2302(a)(1).

USDA's rejection of California's initial request has denied emergency allotments to more than a million SNAP households who already receive the maximum regular SNAP allotments because of their extreme poverty. Plaintiffs Robin Hall and Steven Summers are among these households. Decl. of Robin Hall in Supp. of Pls.' Mot. for Prelim. Inj. ("Hall Decl.") (ECF No. 4-1) ¶¶ 9-10; Summers Decl. ¶¶ 9-11.

Plaintiff Robin Hall is a 45-year old woman who lives in Santa Rosa, California. Hall Decl. ¶¶ 2, 3. She lives and works as an unpaid volunteer at the Homeless Services Center in Santa Rosa. *Id.* ¶ 7. Because she has no income, Ms. Hall receives the maximum monthly SNAP benefit for an individual, $194. *Id.* ¶ 8. Ms. Hall, who has Type 2 diabetes, has had to skip meals during the pandemic because she lost access to the free food resources on which she relied to supplement her SNAP allotment. *Id.* ¶¶ 4, 14-16. The church-based free breakfast program Ms. Hall attended every morning shut down, as did another program where she sometimes received free dinners. *Id.* ¶ 14. She must avoid soup kitchens, which are crowded and have long lines, because she has a high risk of severe symptoms if she contracts COVID-19 due to her diabetes. *Id.* Because of her condition, skipping meals threatens her health. *Id.* Additional temporary SNAP benefits would allow her to eat regularly again. *Id.* ¶ 16. Ms. Hall has received no emergency allotment despite

experiencing these increased costs obtaining food because of the pandemic as a result of USDA's misinterpretation of section 2302(a)(1).  Hall Decl. ¶¶ 9-10.

Plaintiff Steven Summers is a 64-year old man who lives on his own in Oakland, California.  Summers Decl. ¶¶ 2, 3.  He was scheduled to begin a new job in March 2020, which was cancelled because of the pandemic.  *Id*. ¶ 8.  He currently receives the maximum regular SNAP allotment of $194 per month, less a $10 administrative over issuance.  His allotment does not cover his current food costs.  *Id*. ¶¶ 9, 19.  Since the pandemic, Mr. Summers has had to spend more on food because prices are higher, and he cannot always find the inexpensive items and deals he usually relies on.  *Id*. ¶¶ 14-17.  He is also less able to supplement his diet with free food resources.  Summers Decl. ¶ 18.  Before the pandemic, Mr. Summers could select the free food items he needed at the Emeryville Citizens Assistance Program, providing him at least a day's worth of meals each time he visited.  *Id*.  Now, the program provides pre-selected food boxes that sometimes contain non-nutritious foods like candy and items like sour cream that require additional purchases to make a complete meal, adding to what he must spend on food during the pandemic.  *Id*.  Because his regular allotment does not cover these increased expenses, Mr. Summers has had to spend more of his limited savings on food, leaving him without enough to pay his rent.  *Id*. ¶ 19.  Mr. Summers has not received an emergency allotment because of USDA's misinterpretation of Section 2302(a)(1).  *Id*. ¶ 11.

## III.   LEGAL STANDARD AND PROPOSED CLASS DEFINITION

Federal Rule of Civil Procedure 23(a) requires parties seeking class certification to establish:

(1) that the class is so large that joinder of all members is impracticable (numerosity);

(2) that there are one or more questions of law or fact common to the class (commonality);

(3) that the named parties' claims are typical of the class (typicality); and

(4) that the class representatives will fairly and adequately protect the interests of other members of the class (adequacy of representation).

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011). The proposed class must also satisfy one of the subsections of Rule 23(b), "which defines three different types of classes." *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 512 (9th Cir. 2013). Plaintiffs who satisfy these prerequisites have a "categorical" right to "pursue [their] claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010).

Plaintiffs propose to certify a class under Rule 23(b)(2) defined as follows:

> SNAP recipients in California who have been deemed eligible to receive, are receiving, or will receive the regular maximum monthly SNAP allotment for their household size from March 2020 until the Secretary for Health and Human Services rescinds the COVID-19 public health emergency declaration or the State-issued emergency or disaster declaration expires.

Membership in the proposed class is based on objective characteristics: 1) a California resident; 2) deemed eligible for or receiving the maximum regular monthly SNAP allotment for their household size; 3) during the specified time frame (March 2020 until either the federal or state emergency declaration expires). *See Hernandez v. County of Monterey*, 305 F.R.D. 132, 152 (N.D. Cal. 2015). Anticipating many new SNAP applications as economic conditions deteriorate, the class definition includes those who will newly meet the definition in the coming months. *Rodriguez v. Hayes*, 591 F.3d 1105, 1118 (9th Cir. 2010) ("the inclusion of future class members in a class is not itself unusual or objectionable.").

## IV.  THE PROPOSED CLASS SHOULD BE CERTIFIED

### A.  The Proposed Class Satisfies the Requirements of Rule 23(a).

A district court must conduct a "rigorous analysis" to ensure that the Rule 23(a) requirements are met. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). The named plaintiffs and the proposed class easily satisfy these requirements.

#### 1.  The Proposed Class is Sufficiently Numerous that Joinder is Impractical

Numerosity is met when the proposed class "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs "do[] not need to allege a precise number of class members, but may make a reasonable estimate." *Wortman v. Air*

*New Zealand*, 326 F.R.D. 549, 556 (N.D. Cal. 2018). A class of at least 40 members will presumptively meet this requirement. *Id.* Classes challenging unlawful denials of public benefits regularly satisfy numerosity. *See, e.g.*, *Garnett v. Zeilinger*, 301 F. Supp. 3d 199, 206 (D.D.C. 2018).

Over 4 million Californians receive SNAP benefits in over 2.1 million households. Nako Decl. ¶ 3, Ex. 5. Of those recipients, over a million households currently are deemed eligible for the maximum monthly benefit and have not received "emergency allotments." *See* Nako Decl. ¶ 3, Exs. 5, 8.[9] Thus, the proposed class easily satisfies numerosity.

### 2. The Case Presents Common Questions of Law and Fact

Plaintiffs satisfy the commonality requirement of Rule 23(a)(2) because there are questions of law and fact common to the class. Just one common question is sufficient for commonality provided that the "determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke." *Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338, 350, 359 (2011). Rule 23(a)(2)'s commonality standard is "construed permissively," and "[a]ll questions of fact and law need not be common to satisfy the rule." *Ellis*, 657 F.3d at 981. Class actions that seek injunctive or declaratory relief by their very nature present common questions of law and fact. *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 239 F.R.D. 9, 26 (D.D.C. 2007) (citing 7A Wright, Miller & Kane, *Federal Practice and Procedure* § 1763 (3d ed. 2006)).

The Proposed Class satisfies commonality because the *same* question of law applies to every member of the class: has USDA misinterpreted section 2302(a)(1) by limiting eligibility for "emergency allotments" to SNAP recipients who receive less than the maximum regular monthly benefit for their household size in violation of the Administrative

---

[9] In its March 27 request for emergency allotments, which USDA approved, California estimated that there were 2,176,109 SNAP-participating households. Nako Decl. ¶ 3, Ex. 5. In its request for an extension of benefits, filed on May 4 and approved by USDA, California estimated that 1,151,714 households were receiving emergency allotment benefits. *Id.* ¶ 3, Ex. 8. Subtracting the number of households that received emergency allotments from the total number of participating households results in approximately 1,024,395 households that are not receiving emergency allotments.

Procedures Act.  Complaint (ECF No. 1) ¶ 60.  "Commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Hernandez*, 305 F.R.D. at 153.

In addition, the key facts underlying the claims are common:  every class member is a California resident who is eligible to receive the maximum monthly benefit for their household size; every class member has been denied emergency allotments as result of USDA's refusal to allow California to provide emergency allotments to them; and every class member has been harmed as a result of USDA's actions.

Resolution of the core legal question—what is the plain meaning of section 2302(a)(1)—will determine whether injunctive relief is appropriate to direct USDA to allow California's SNAP program to provide emergency allotments to the proposed class members.  Rule 23(a)(2) is therefore met.

### 3. The Named Plaintiffs Are Typical of the Class

To satisfy typicality, plaintiffs must show that their claims are typical of those of the class.  Fed. R. Civ. P. 23(a)(3).  "The test of typicality is whether the other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same court of conduct."  *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (internal quotations omitted).  Plaintiffs meet this test.

Plaintiffs Hall and Summers are SNAP recipients in California who are currently eligible for the maximum monthly benefit for their household size (one).  Hall Decl. ¶¶ 9-10; Summers Decl. ¶¶ 9-10; *see supra* Section II.A.  As a result of the global pandemic, it is more difficult to obtain food at nearby grocery stores and, when it is available, the food is more expensive.  Summers Decl. ¶¶ 14-17.  Plaintiffs have been unable to rely on other food sources, like soup kitchens or food pantries, because they have shut down or have reduced what food is available.  Hall Decl. ¶ 14; Summers Decl. ¶ 18.  Their regular SNAP monthly benefit is insufficient to cover their enhanced needs arising from the pandemic.  Hall Decl. ¶¶ 15-16; Summers Decl. ¶ 19. They have not received an emergency allotment of SNAP

benefits because USDA has prohibited state agencies like the California Department of Social Services from providing them to recipients who receive the maximum monthly benefit.  Hall Decl. ¶¶ 9-10, Summers Decl. ¶ 11; *see supra* Section II.D-E.

The Plaintiffs share the identical injury with all class members: they have not received an emergency allotment of SNAP benefits as provided by the Families First Act because of USDA's misinterpretation of section 2302(a)(1).  As a result, they are deprived of supplemental nutrition benefits that they need to address food insecurity created by the pandemic.  Their injuries are the same as those experienced by the class.  *See* Bauer Decl. ¶¶ 26-27, 30-34.

### 4. The Named Plaintiffs and Counsel Are Adequate Representatives

The final requirement under Rule 23(a) is that the class representatives and their proposed Class Counsel will "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The court must determine whether the class representatives "have any conflicts of interest with other class members" and will "prosecute the action vigorously on behalf of the class" through qualified counsel.  *Staton v. Boeing Corp.*, 327 F.3d 938, 957 (9th Cir. 2003).  Plaintiffs and their proposed class counsel meet this requirement.

Plaintiffs' interests are directly aligned with those of the class.  Like all class members, they are facing increased food insecurity as a result of the pandemic but have received no emergency allotments as authorized by Congress.  They want to obtain these benefits for themselves and for the class.  They understand their duties as class representatives and that they must prioritize the interests of the class over their own.  Hall Decl. ¶ 18; Summers Decl. ¶ 21.

Proposed class counsel will also adequately represent the interests of the class.  Plaintiffs' counsel, the Western Center on Law and Poverty and the Impact Fund, together bring extensive experience in public benefits and class action litigation and are prepared to vigorously represent the class.  *See infra* Section IV.C. (Appointment of Class Counsel).

**B.     The Proposed Class Meets the Standard for Rule 23(b)(2) Certification.**

Federal Rule of Civil Procedure 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(2) is "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons*, 754 F.3d at 688.  The "indivisible nature of the injunctive and declaratory remedy" justifies certification because the conduct "can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof,* 84 N.Y.U. L. Rev. 97, 132 (2007)). The fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2).  *Rodriguez*, 591 F.3d at 1125 (9th Cir. 2010).

Courts routinely certify classes challenging federal agency policies under Rule 23(b)(2).  *See e.g.*, *J.L. v. Cissna*, No. 18-cv-04914, 2019 WL 415579, at *12 (N.D. Cal. Feb. 1, 2019) (challenge to U.S. Citizenship and Immigration Services's policy denying legal status to certain non-citizen children who received guardianship order in California probate courts); *Jane Doe 1 v. Nielsen*, 357 F. Supp. 972, 993 (N.D. Cal. 2018) (challenge to Department of Homeland Security notices regarding refugee status ineligibility); *Hart v. Colvin*, 310 F.R.D. 427, 439 (N.D. Cal. 2015) (challenge to Social Security Administration policy of relying on disqualified doctor's reports to deny benefits).

Here, Plaintiffs have provided significant proof that USDA adopted a uniform policy that prohibits states from providing emergency allotments to SNAP recipients who are receiving the maximum monthly benefit for their household size.  As a result of that policy, Plaintiffs and over a million California households lack sufficient resources to purchase food under the exigent conditions created by the public health emergency.  Plaintiffs seek class-wide injunctive and declaratory relief to remedy USDA's refusal to approve California's request to provide emergency allotments of SNAP benefits to recipients like them.  Any

order entered by this Court would inure to the benefit of all members of the plaintiff class because California could seek approval for emergency allotments as authorized by the Families First Act. Certification is thus appropriate under Rule 23(b)(2) and should be granted.

### C. The Court Should Appoint Attorneys from the Western Center on Law and Poverty and the Impact Fund as Class Counsel under Rule 23(g).

When certifying a class, the court is required to appoint counsel to represent the certified class. Fed. R. Civ. P. 23(g). This Court should appoint attorneys from the Western Center on Law and Poverty (Alexander Prieto, Richard A. Rothschild, Antionette Dozier, Rebecca Miller) and from the Impact Fund (Lindsay Nako, Jocelyn D. Larkin, David S. Nahmias) to represent the proposed class.

In evaluating counsel, the court must consider: 1) the work counsel has done investigating the claims; 2) counsel's experience in handling class actions and the types of claims asserted in the action; 3) counsel's knowledge of the applicable law; and 4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1). In addition to these factors, the court may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id*.

**Investigation:** Proposed class counsel has been diligently investigating the specific claims in this case since Congress enacted the Families First Coronavirus Response Act and USDA announced its guidance. Decl. of Richard A. Rothschild in Supp. of Mot. for Class Certification ("Rothschild Decl.") ¶ 9; Decl. of Jocelyn D. Larkin in Supp. of Mot. for Class Certification ("Larkin Decl.") ¶ 9. The organizations have evaluated the legal issues relating to SNAP recipients in California, consulted with economists, hunger experts and food bank professionals, and counseled clients who receive SNAP benefits. Rothschild Decl. ¶ 9; Larkin Decl. ¶ 9. The organizations sent a letter to Defendant USDA on April 23, 2020, explaining why its interpretation of section 2302(a)(1) of the Act was incorrect. Decl. of Alexander Prieto in Supp. of Pls.' Mot. for Prelim. Inj. ¶ 2 & Ex. 1 (ECF No. 4-8).

//

1       **Subject Matter and Class Action Expertise**: Attorneys from Western Center have
2 deep and longstanding expertise in the area of public benefits. Rothschild Decl. ¶¶ 5-8.
3 They have served as counsel in many class actions, including significant cases on behalf of
4 public assistance recipients. *Id.* ¶¶ 3-4. Impact Fund attorneys have expertise in class action
5 and complex litigation, particularly for underserved communities. Larkin Decl. ¶¶ 6-8. They
6 have been approved to serve as class counsel in many major civil rights class actions in this
7 district and in other courts. Larkin Decl. ¶ 6.

8       **Commitment of Time and Resources:** Proposed class counsel has and is prepared to
9 commit the time and resources necessary to litigate this case and represent the interests of the
10 class. Rothschild Decl. ¶ 10; Larkin Decl. ¶ 10. Each of the attorneys is admitted to practice
11 in this district. Rothschild Decl. ¶¶ 4-7; Larkin Decl. ¶¶ 1, 7-8.

## V. CONCLUSION

This case presents precisely the circumstances where a class action is warranted. Accordingly, Plaintiffs respectfully request that this Court certify the proposed class and appoint class counsel.

Dated:  May 21, 2020           IMPACT FUND
                                     WESTERN CENTER ON LAW & POVERTY

                                     By: _____
                                         Jocelyn D. Larkin
                                         Attorneys for Plaintiffs